UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTORINO MARQUEZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHT HEALTH GROUP, INC., G. MIKE MIKAN, CATHERINE R. SMITH, JEFFREY J. SCHERMAN, ROBERT J. SHEEHY, KEDRICK D. ADKINS JR., NAOMI ALLEN, JEFFREY FOLICK, LINDA GOODEN, JEFFERY R. IMMELT, MANUEL KADRE, STEPHEN KRAUS, MOHAMAD MAKHZOUMI, and ADAIR NEWHALL,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Victorino Marquez ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Bright Health Group, Inc. ("Bright Health" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.        This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Bright Health common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about June 24, 2021 (the "IPO" or "Offering"); and/or (b) Bright Health securities between June 24, 2021 and November 10, 2021, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.        Bright Health is an integrated care delivery company that engages in the delivery and financing of health insurance plans in the U.S.  The Company operates in two segments— NeueHealth and Bright HealthCare.  Bright Health offers individual and family, Medicare, and employers insurance plans.  The Company also operates 28 managed and affiliated risk-bearing primary care clinics.

3.        On May 19, 2021, Bright Health filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on June 23, 2021 (the "Registration Statement").

4.        On or about June 24, 2021, pursuant to the Registration Statement, Bright Health's common stock began trading on the New York Stock Exchange ("NYSE") under the trading symbol "BHG".

5.        On June 25, 2021, Bright Health filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

6.     Pursuant to the Offering Documents, Bright Health conducted the IPO, selling approximately 51 million shares of its common stock to the public at the Offering price of $18.00 per share, for approximate proceeds of $887 million to the Company after applicable underwriting discounts and commissions, and before expenses.

7.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Bright Health had overstated its post-IPO business and financial prospects; (ii) the Company was ill-equipped to handle the impact of COVID-19-related costs; (iii) the Company was experiencing a decline in premium revenue because of a failure to capture risk adjustment on newly added lives; (iv) all the foregoing was reasonably likely to have a material negative impact on Bright Health's business and financial condition; and (v) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

8.     On November 11, 2021, Bright Health reported its third quarter 2021 results.  Among other results, Bright Health reported earnings per share ("EPS") of -$0.48 as calculated under U.S. generally accepted accounting principles ("GAAP"), missing consensus estimates by $0.31.  Bright Health also reported a sharp rise in in the Company's medical cost ratio ("MCR"), advising investors that its MCR "for the third quarter of 2021 was 103.0%, which includes a 540 basis point unfavorable impact from COVID-19 related costs and a 900 basis point

unfavorable impact primarily from a cumulative reduction in premium revenue due to an inability to capture risk adjustment on newly added lives."

9.      On this news, Bright Health's stock price fell $2.36 per share, or 32.33%, to close at $4.94 per share on November 11, 2021.

10.     As of the time this Complaint was filed, the price of Bright Health common stock continues to trade below the $18.00 per share Offering price, damaging investors.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.     Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Pursuant to the Company's most recent quarterly report filed with the SEC, as of November 4, 2021, there were 628,315,180 shares of the Company's common stock outstanding. Bright Health securities trade on the NYSE. Accordingly, there are presumably hundreds, if not thousands, of investors in Bright Health securities, some of whom undoubtedly reside in this Judicial District.

15.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

16.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Bright Health common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Bright Health securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant Bright Health is a Delaware corporation with principal executive offices located at 8000 Norman Center Drive, Suite 1200, Minneapolis, Minnesota 55437.   The Company's common stock trades in an efficient market on the NYSE under the trading symbol "BHG".

18.     Defendant G. Mike Mikan ("Mikan") has served as Bright Health's President, Chief Executive Officer, and a Director of the Company at all relevant times.   Mikan is also Vice Chairman of the Company.   Mikan signed or authorized the signing of the Registration Statement filed with the SEC.

19.     Defendant Catherine R. Smith ("Smith") has served as Bright Health's Chief Financial and Administrative Officer at all relevant times.   Smith signed or authorized the signing of the Registration Statement filed with the SEC.

20.     Defendants Mikan and Smith are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

21.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Bright Health's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Bright Health's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Bright Health, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Bright Health and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

23.     Defendant Jeffrey J. Scherman ("Scherman") served as Bright Health's Chief Accounting Officer at the time of the IPO.  Scherman signed or authorized the signing of the Registration Statement filed with the SEC.

24.     Defendant Robert J. Sheehy ("Sheehy") has served as Bright Health's Chairman at all relevant times.  Sheehy signed or authorized the signing of the Registration Statement filed with the SEC.

25.     Defendant Kedrick D. Adkins Jr. ("Adkins") has served as a Director of Bright Health at all relevant times.  Adkins signed or authorized the signing of the Registration Statement filed with the SEC.

26.     Defendant Naomi Allen ("Allen") has served as a Director of Bright Health at all relevant times.  Allen signed or authorized the signing of the Registration Statement filed with the SEC.

27.     Defendant Jeffrey Folick ("Folick") served as a Director of Bright Health at the time of the IPO.  Folick signed or authorized the signing of the Registration Statement filed with the SEC.

28.     Defendant Linda Gooden ("Gooden") has served as a Director of Bright Health at all relevant times.  Gooden signed or authorized the signing of the Registration Statement filed with the SEC.

29.     Defendant Jeffery R. Immelt ("Immelt") has served as a Director of Bright Health at all relevant times.  Immelt signed or authorized the signing of the Registration Statement filed with the SEC.

30.     Defendant Manuel Kadre ("Kadre") has served as a Director of Bright Health at all relevant times.  Kadre signed or authorized the signing of the Registration Statement filed with the SEC.

31.     Defendant Stephen Kraus ("Kraus") has served as a Director of Bright Health at all relevant times.  Kraus signed or authorized the signing of the Registration Statement filed with the SEC.

32.     Defendant Mohamad Makhzoumi ("Makhzoumi") has served as a Director of Bright Health at all relevant times.  Makhzoumi signed or authorized the signing of the Registration Statement filed with the SEC.

33.     Defendant Adair Newhall ("Newhall") served as a Director of Bright Health at the time of the IPO.  Newhall signed or authorized the signing of the Registration Statement filed with the SEC.

34.     The Exchange Act Individual Defendants and Defendants Scherman, Sheehy, Adkins, Allen, Folick, Gooden, Immelt, Kadre, Kraus, Makhzoumi, and Newhall are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

35.     As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Bright Health common stock in the IPO for their own benefit and the benefit of the Company.  The Securities Act Individual Defendants were key members of the IPO working group and executives of the Company who pitched investors to purchase the shares sold in the IPO.

36.     Bright Health and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."

37.     The Exchange Act Defendants and the Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

38.     Bright Health is an integrated care delivery company that engages in the delivery and financing of health insurance plans in the U.S.  The Company operates in two segments—NeueHealth and Bright HealthCare.  Bright Health offers individual and family, Medicare, and employers insurance plans.  The Company also operates 28 managed and affiliated risk-bearing primary care clinics.

39.    On May 19, 2021, Bright Health filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on June 23, 2021.

40.    On or about June 24, 2021, pursuant to the Registration Statement, Bright Health's common stock began trading on the NYSE under the trading symbol "BHG".

41.    On June 25, 2021, Bright Health filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

42.    Pursuant to the Offering Documents, Bright Health conducted the IPO, selling approximately 51 million shares of its common stock to the public at the Offering price of $18.00 per share, for approximate proceeds of $887 million to the Company after applicable underwriting discounts and commissions, and before expenses.

**Materially False and Misleading Statements Issued in the Offering Documents**

43.    The Offering Documents widely touted Bright Health's historical operating and financial results following the onset of the COVID-19 pandemic, stating, *inter alia*:

> Since its inception, Bright Health has proven, expanded, and enhanced our aligned enablement model. As of April 2021, the 28 managed and affiliated risk-bearing primary care clinics in our NeueHealth business care for nearly 75,000 unique patients, approximately 30,000 of which are served through value-based arrangements, with a strong Net Promoter Score (NPS) of 78. In addition to our directly managed and affiliated clinics, NeueHealth manages care for an additional 33 clinics through its Value Services Organization. From serving 10,765 consumers in a single state and product line just five years ago, our Bright HealthCare business now serves approximately 623,000 consumers, including approximately 515,000 commercial consumers and approximately 108,000 Medicare Advantage consumers, with a national presence in 14 states and 99 core-based statistical areas, which we define as markets. We generated over $1.2 billion in total revenue in 2020, as well as $874.6 million in total revenue for the three months ended March 31, 2021, and we are well-positioned to continue achieving significant growth across our diversified enterprise. Led by a seasoned management team built for scale — with senior leaders previously holding executive leadership positions at Fortune 100 companies across multiple sectors, including healthcare, consumer

retail, and technology — Bright Health is building the national, integrated healthcare system of the future.

44.   In addition, the Offering Documents stated that Bright Health was "built on alignment," touting, in relevant part:

Bright Health has created a new alignment model built upon three core principles applied consistently but flexed accordingly to "meet our Care Partners where they are":

- ***Clinical Alignment*** — We believe that alignment in healthcare starts with those responsible for delivering care locally. As each of our Care Partners has a unique set of clinical tools and capabilities to manage population health risk, our adaptable model lends them the support necessary to enhance local healthcare delivery and strengthen existing provider-consumer relationships. As Bright Health enters into each Care Partner relationship, we endeavor to understand that Care Partner's existing clinical needs, tools, and capabilities. We then collaborate to develop a Joint Model of Health. This robust playbook outlines the division of accountability and supports Care Partners with evidence-based best practices to enhance outcomes, lower costs, and drive a consistent experience for consumers.

- ***Financial Alignment*** — We have developed value-based payment structures that enable us to take a staged approach to financial alignment with our Care Partners. We first carefully consider each Care Partner's ability and interest to take varying levels of population health risk. Whether through shared savings contracts, capitated arrangements, or other contractual incentives, we work collaboratively with our Care Partners to determine and structure the best financial alignment model for each local market and individual organization. Once aligned, we then work with our Care Partners over time to optimize the relationship and prepare them for success under more advanced models of value-based care.

***

[. . .] Bright Health's alignment model can adapt to the nuances of local markets while continuing to deliver MCR improvement as our markets mature. As shown below, our MCR performance in states with IFP product offerings, as grouped by cohort based upon number of years operating in a given state, demonstrates a declining average MCR from 92.1% in the first year to 66.4% in our most mature markets by the fourth year.

45.   Further, in discussing the Company's competitive advantages, the Offering Documents stated, in relevant part:

We have a number of critical competitive advantages that we believe will propel Bright Health's success:

- We have a differentiated business model that integrates the delivery and financing of healthcare.
- We have a national, diversified service model.
- We have a purpose-built consumer and provider technology platform.
- We have a flexible, differentiated model able to meet the needs of any market.
- We have a seasoned management team built for scale.
- We have a multi-pronged organic and inorganic growth strategy.

46.     Next, in discussing the Company's market opportunity, the Offering Document stated, in relevant part:

We have a tremendous addressable market opportunity, which we estimate will reach approximately $4.2 trillion in 2021, and we expect our addressable market opportunity to continue to expand.

- ***Growing Retail Market Segments (Medicare, IFP, etc.).***   We believe the Medicare Advantage market is the most dynamic segment of U.S. health insurance today. It is estimated that the 5-year CAGR from 2019 to 2024 will be 10% and that the market will grow by $170 billion over that time. CMS estimates that the total overall Medicare market will exceed $1 trillion by 2023. The IFP market has also significantly stabilized, maintaining between 11 million and 12 million covered lives since 2015. Furthermore, with tailwinds from recent political developments, we believe the IFP market is well-positioned to grow.

47.     Finally, in discussing Bright HealthCare, the Offering Documents stated, in relevant part:

Bright HealthCare began serving consumers in 2017 through IFP products. Since then, our business has evolved to serve higher acuity populations, adding traditional MAPD in 2018 and expanding further to serve a special needs population in 2019. Bright HealthCare has been able to generate consistent MCR performance despite the accelerating pace of our new market expansion and an increasing share of Medicare Advantage business, which is priced to a higher MCR.

48.     The statements referenced in ¶¶ 43-47 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading

11

and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) Bright Health had overstated its post-IPO business and financial prospects; (ii) the Company was ill-equipped to handle the impact of COVID-19-related costs; (iii) the Company was experiencing a decline in premium revenue because of a failure to capture risk adjustment on newly added lives; (iv) all the foregoing was reasonably likely to have a material negative impact on Bright Health's business and financial condition; and (v) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

**Materially False and Misleading Statements Issued During the Class Period**

49.     The Class Period begins on June 24, 2021, when Bright Health's common stock began publicly trading on the NYSE pursuant to the materially false and misleading statements or omissions contained in the Offering Documents.

50.     On August 3, 2021, Bright Health issued a press release reporting its second quarter 2021 results. That press release stated the following regarding the Company's MCR:

> Bright Health Group's medical cost ratio ("MCR") for the second quarter of 2021 was 86.8% on a reported basis and 82.0% on an adjusted basis. This is an improvement over last year's second quarter adjusted MCR of 82.7%. "As we step back and look at year-to-date 2021 compared to the first half of 2020, our growth and ability to demonstrate performance is truly remarkable. Our first half revenue has more than quadrupled since last year, all while maintaining a consistent adjusted MCR below 80%," said Cathy Smith, Chief Financial and Administrative Officer. In addition, the Company continues to leverage operating costs as the business scales with an operating cost ratio of 23.4% for the second quarter, an improvement of 6.5 percentage points over the same period last year.

51.     That same day, Bright Health hosted an earnings call with investors and analysts to discuss the Company's Q2 2021 results (the "Q2 2021 Earnings Call"). During the scripted portion of the Q2 2021 Earnings Call, Defendant Mikan stated, in relevant part:

Bright Health Group is well on its way to building the national integrated system of care needed to change healthcare in the United States. Both Bright Health Care and NeueHealth are demonstrating significant growth and diversification. And at a Bright Health Group level, we are forecasting 2021 revenue of greater than $4 billion.

\*\*\*

[. . .] [W]e have delivered consistent performance. Critical to our model is our ability to price to our underlying capabilities and cost structure in each market. Even with our explosive growth, we have been able to demonstrate in an adjusted medical cost ratio below 80% across our enterprise during the first half of 2021. Critical to this measure is our model's ability to drive in-network utilization within our integrated systems of care.

\*\*\*

Our consistent performance starts with effective pricing that is built on both our unit cost advantage gained through our care partner networks and our integrated systems of care that allow us to effectively manage medical costs by driving improved in-network utilization and accurately capturing membership risk.

52.     In addition, during the scripted portion of the Q2 2021 Earnings Call, Defendant Smith stated, in relevant part:

We are pleased with our second quarter results and the momentum we are seeing across the business. At the Bright Health Group level after adjusting for intercompany eliminations, revenue increased 275% year-over-year to $1.1 billion in Q2.

\*\*\*

Managing medical costs as efficiently and effectively as possible for the members we serve is critical. Internally, we look at our underlying operational performance without prior period adjustments and unusual items like the impact of COVID-related expenses.

\*\*\*

In Q2, our adjusted medical cost ratio at the enterprise level was 82%, in line with the prior year. On a reported basis, our Q2 '21 MCR was 86.8%, with the adjustments primarily driven by COVID impact and prior period development.

\*\*\*

For reference, the appendix of our earnings release and investor presentation all concludes a detailed bridge. The 4.4 percentage point difference between our reported and adjusted MCR for the first half of 2021 is comprised of direct COVID cost impact to our MCR of 360 basis points and non-COVID prior-period development, representing an unfavorable impact to MCR of 90 basis points.

\*\*\*

[. . .] [T]his healthier-than-expected population resulted in an offsetting unfavorable risk adjustment impact to revenue of $22.3 million. We expect the impact of MCR adjustments to decline in the future as our contribution from existing membership increases as a percentage of our overall book-of-business.

\*\*\*

While there are a variety of items that can impact MCR both positively and negatively, we have demonstrated we can manage within a reasonable range of outcomes, considering the maturity of our business and of our membership population.

53. On August 11, 2021 Bright Health filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "Q2 2021 10-Q"). The Q2 2021 10-Q stated, in relevant part:

Our MCR of 86.8% for the three months ended June 30, 2021 increased 670 basis points compared to the same period in 2020. Our MCR for the three months ended June 30, 2021 included a 320 basis point unfavorable impact from COVID-19 related costs and a 160 basis point unfavorable impact from non-COVID prior period developments ("PPD"), and MCR for the three months ended June 30, 2020 included a 220 basis point unfavorable impact from COVID-19 costs and a 30 basis point favorable impact from non-COVID PPD. We also estimate that the three months ended June 30, 2020 included a favorable impact of 440 basis points due to eliminated or deferred care driven by reduced demand for services during the COVID-19 pandemic.

The increased MCR of 83.5% for the six months ended June 30, 2021 increased 800 basis points compared to the same period in 2020. Our MCR for the six months ended June 30, 2021 included a 360 basis point unfavorable impact from COVID-19 related costs and a 90 basis point unfavorable impact from non-COVID PPD, and our MCR for the six months ended June 30, 2020 included a 130 basis point unfavorable impact from COVID-19 costs, a 30 basis point favorable impact from non-COVID PPD and a 260 basis point favorable impact due to deferred utilization. The MCR in both 2021 periods was also impacted by increased medical costs from

MA product mix as a result of the Brand New Day and CHP acquisitions, which were partially offset by favorable market mix and rate in IFP.

54.    Appended to the Q2 2021 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by Defendants Mikan and Smith, attesting that, "[t]he information contained in the [Q2 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

55.    The statements referenced in ¶¶ 49-54 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Bright Health had overstated its post-IPO business and financial prospects; (ii) the Company was ill-equipped to handle the impact of COVID-19-related costs; (iii) the Company was experiencing a decline in premium revenue because of a failure to capture risk adjustment on newly added lives; (iv) all the foregoing was reasonably likely to have a material negative impact on Bright Health's business and financial condition; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

56.    On November 11, 2021, Bright Health issued a press release reporting its third quarter 2021 results.  The press release stated, in relevant part:

**Third Quarter 2021 Financial Highlights**

**Bright Health Group's total revenue of $1,079 million in the third quarter of 2021 increased by $727 million**, or 206.3%, compared to the prior-year period. Revenue was primarily driven by organic membership growth in Bright HealthCare during the 2020 Open Enrollment Period and the 2021 Special Enrollment Period for our Commercial business that began on February 15, 2021, and NeueHealth organic and inorganic growth. The Company also experienced an increase in investment income due to a $46 million unrealized gain on equity securities.

**Bright Health Group's medical cost ratio ("MCR") for the third quarter of 2021 was 103.0%**, which includes a 540 basis point unfavorable impact from COVID-19 related costs and a 900 basis point unfavorable impact primarily from a cumulative reduction in premium revenue due to an inability to capture risk adjustment on newly added lives. Our MCR in the third quarter of 2020 was 90.1%, which included a 390 basis point unfavorable impact from COVID-19 costs and a 530 basis point favorable impact from non-COVID prior period developments.

**The Company's GAAP net loss was $296.7 million in the third quarter of 2021**, an increase of $237.5 million compared to the prior-year period. The Company's non-GAAP Adjusted EBITDA was a loss of $245.9 million in the third quarter of 2021, an increase of $191.8 million compared to the prior-year period.

"Our year-to-date 2021 MCR of 90.3% represents solid performance, especially given the remarkable growth and unique factors we have experienced this year. As a company still building to scale, we expect to see some quarterly variation in performance from time to time. Overall, we believe matching payment to population health status is needed to align incentives and drive performance in the direct-to-consumer market. However, with a predominately new and rapidly growing business, population health risk is difficult to estimate in the near-term but is expected to improve as our markets and populations mature, setting us up well for 2022," said Cathy Smith, Chief Financial and Administrative Officer. "Our focus continues to be on generating long-term value for the business and our shareholders through relentless pursuit of our mission."

57.    On this news, Bright Health's stock price fell $2.36 per share, or 32.33%, to close at $4.94 per share on November 11, 2021.

58.    As of the time this Complaint was filed, the price of Bright Health common stock continues to trade below the $18.00 per share Offering price, damaging investors.

59.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Bright Health common stock pursuant and/or

traceable to the Offering Documents issued in connection with the IPO, and/or Bright Health securities during the Class Period; and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

61.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Bright Health securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Bright Health or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

62.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

63.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

64.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Bright Health;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Bright Health to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Bright Health securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

65.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

66.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Bright Health securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Bright Health securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

67.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

68.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

69.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

70.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

71.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Bright Health securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Bright Health securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

72.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Bright Health securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Bright Health's finances and business prospects.

73.    By virtue of their positions at Bright Health, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Exchange Act

Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

74.     Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of Bright Health, the Exchange Act Individual Defendants had knowledge of the details of Bright Health's internal affairs.

75.     The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Bright Health.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Bright Health's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Bright Health securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Bright Health's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Bright Health securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

76.     During the Class Period, Bright Health securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or

caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Bright Health securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Bright Health securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Bright Health securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

77.    By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

78.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)

79.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.    During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Bright Health, and conducted and participated, directly and

indirectly, in the conduct of Bright Health's business affairs.  Because of their senior positions, they knew the adverse non-public information about Bright Health's misstatement of income and expenses and false financial statements.

81.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Bright Health's financial condition and results of operations, and to correct promptly any public statements issued by Bright Health which had become materially false or misleading.

82.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Bright Health disseminated in the marketplace during the Class Period concerning Bright Health's results of operations.  Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Bright Health to engage in the wrongful acts complained of herein.  The Exchange Act Individual Defendants, therefore, were "controlling persons" of Bright Health within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Bright Health securities.

83.     Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Bright Health.  By reason of their senior management positions and/or being directors of Bright Health, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Bright Health to engage in the unlawful acts and conduct complained of herein.  Each of the Exchange Act Individual Defendants exercised control over the general operations of Bright Health and possessed the power to control the specific

activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

84.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Bright Health.

## COUNT III

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

85.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

86.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

87.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

88.     Bright Health is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

89.     As issuer of the shares, Bright Health is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

90.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

91.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

92.     Plaintiff acquired Bright Health shares pursuant and/or traceable to the Offering Documents for the IPO.

93.     Plaintiff and the Class have sustained damages.   The value of Bright Health common stock has declined substantially subsequent to and because of Defendants' violations.

## COUNT IV

### (Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)

94.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

95.     This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

96.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Bright Health within the meaning of Section 15 of the Securities Act.   The Securities Act Individual Defendants had the power and influence and exercised the same to cause Bright Health to engage in the acts described herein.

97.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

98.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 6, 2022                     Respectfully submitted,

                                            **POMERANTZ LLP**

                                            _/s/Jeremy A. Lieberman_
                                            Jeremy A. Lieberman
                                            J. Alexander Hood II
                                            Thomas H. Przybylowski
                                            600 Third Avenue
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665
                                            jalieberman@pomlaw.com
                                            ahood@pomlaw.com
                                            tprzybylowski@pomlaw.com

                                            **BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
                                            Peretz Bronstein
                                            60 East 42nd Street, Suite 4600
                                            New York, New York 10165
                                            Telephone: (212) 697-6484
                                            Facsimile: (212) 697-7296
                                            peretz@bgandg.com

                                            _Attorneys for Plaintiff_

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I,     _____VICTORINO MARQUEZ_____    , make this declaration pursuant to

Section 27(a)(2) of the Securities Act of 1933 (the "Securities Act") and/or Section 21D(a)(2) of the

Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation

Reform Act of 1995.

2.    I have reviewed a Complaint against Bright Health Group, Inc. ("Bright Health" or the

"Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Bright Health securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or the Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired: (a) Bright Health common stock pursuant and/or traceable to the Offering

Documents issued in connection with the IPO as specified in the Complaint; and/or (b) Bright Health

securities during the Class Period as specified in the Complaint; including providing testimony at deposition

and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff

in this action.

5.    The attached sheet lists all of my transactions in: (a) Bright Health common stock pursuant

and/or traceable to the Offering Documents issued in connection with the IPO as specified in the Complaint;

and/or (b) Bright Health securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have

not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the

class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs

and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.     I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.


Executed  November 18, 2021
           (Date)



                                        (Signature)

                              VICTORINO MARQUEZ
                                  (Type or Print Name)

**Bright Health Group, Inc. (BHG)**                                                          **Márquez, Victorino**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 8/16/2021 | 100 | $9.0000 |
| Purchase | 8/17/2021 | 1,500 | $9.9000 |
| Purchase | 9/7/2021 | 1,000 | $10.2600 |