UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

VICTORINO MARQUEZ, *Individually and on Behalf of All Others Similarly Situated*,

|  |  |
|---|---|
| Plaintiff, | MEMORANDUM <u>AND ORDER</u> |
| -against- | 22-CV-101 (AMD) (RLM) |
| BRIGHT HEALTH GROUP, INC., *et al.*, |  |
| Defendants. |  |

-------------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Currently pending before this Court are six motions for the appointment of lead plaintiff and approval of lead counsel, filed by the following movants: (1) Winston Van ("Van"), (2) Oklahoma Police Pension and Retirement System ("OPPRS"), (3) Anthony Primerano and Jeffrey D. Ackerman (collectively, "Primerano/Ackerman"), (4) Jonathan Fornaci ("Fornaci"), (5) the City of Providence, Rhode Island (the "City of Providence"), and (6) Kaadir Herrera ("Herrera").[1]  After filing their respective motions, the City of Providence withdrew its motion, and Fornaci and Primerano/Ackerman submitted notices of non-opposition to the competing motions, wherein they acknowledge that they do not possess the largest financial interest of the six movants.  Accordingly, the Court terminates the City of

---

[1] See generally Van Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Mar. 7, 2022) ("Van Motion"), Electronic Case Filing ("ECF") Docket Entry ("DE") #7; OPPRS Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Mar. 7, 2022) ("OPPRS Motion"), DE #8; Primerano/Ackerman Motion for Appointment as Co-Lead Plaintiffs and Approval of Lead Counsel (Mar. 7, 2022), DE #9; Fornaci Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Mar. 7, 2022), DE #12; City of Providence Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Mar. 7, 2022), DE #13; Herrera Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Mar. 7, 2022) ("Herrera Motion"), DE #16.

Providence's motion as moot and denies Fornaci's motion and Primerano/Ackerman's motion

as moot.  The three remaining movants—Van, Herrera, and OPPRS—have all filed subsequent

submissions opposing one another's motions for appointment as lead plaintiff.  For the reasons

that follow, having considered the various filings, this Court grants Van's motion: Van is

hereby appointed as lead plaintiff and Van's choice of counsel, Labaton Sucharow LLP

("Labaton Sucharow"), is approved as lead counsel.[2]

## BACKGROUND

On January 6, 2022, plaintiff Victorino Marquez ("plaintiff Marquez"), represented by

Pomerantz LLP, commenced this matter by filing a class action complaint against Bright

Health Group, Inc. ("Bright Health") and numerous individual defendants, all of whom are

officers and directors of the company (collectively, "defendants").  See generally Complaint

(Jan. 6, 2022) ("Compl."), DE #1.[3]  The Complaint sets forth claims under Sections 11 and 15

of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77o, and under

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as

amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[4]  See

---

[2] An order appointing lead plaintiff and approving lead counsel qualifies as a non-dispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure (the "FRCP"), allowing this Court to issue a written order (i.e., a Memorandum and Order), rather than a recommended disposition (i.e., a Report and Recommendation).  See Fed. R. Civ. P. 72(a).  Multiple courts, including ones in this District, have concluded that such motions are non-dispositive and may be disposed of by a magistrate judge.  See, e.g., Darish v. N. Dynasty Mins. Ltd., 20-cv-5917 (ENV), 2021 WL 1026567, at *1 n.3 (E.D.N.Y. Mar. 17, 2021) (collecting cases).

[3] The individual defendants include: G. Mike Mikan, Catherine R. Smith, Jeffrey J. Scherman, Robert J. Sheehy, Kedrick D. Adkins Jr., Naomi Allen, Jeffrey Folick, Linda Gooden, Jeffery R. Immelt, Manuel Kadre, Stephen Kraus, Mohamad Makhzoumi, and Adair Newhall.  See Compl. at 1.

[4] "[T]he PSLRA amended both the Securities Act of 1933 and the Securities Exchange Act of 1934."  Skwortz v. Crayfish Co., Ltd., No. 00 CIV. 6766(DAB), 2001 WL 1160745, at *2 n.4 (S.D.N.Y. Sept. 28, 2001) (citation omitted), on reconsideration sub nom. In re Crayfish Co. Sec. Litig., 2002 WL 1268013 (S.D.N.Y. June 6,

Compl. ¶¶ 12, 69-98.  The claims are asserted on behalf of putative class members who purchased or otherwise acquired publicly traded Bright Health securities issued in connection with the company's initial public offering ("IPO") on or about June 24, 2021, and/or between June 24, 2021, and November 10, 2021, inclusive of both dates (the "Class Period").  See id. ¶¶ 1, 12.

Bright Health, a company "that engages in the delivery and financing of health insurance plans in the U.S.[,]" became publicly traded upon its June 24, 2021 IPO.  Id. ¶¶ 2, 4, 38.  According to the Complaint, defendants made a series of materially false and/or misleading statements about Bright Health in the company's IPO registration statement and prospectus, which overstated Bright Health's post-IPO business and financial prospects and failed to disclose that the company was ill-equipped to "handle the impact of COVID-19 related costs" and that it was "experiencing a decline in premium revenue[.]" Id. ¶¶ 7, 48. The pleading further alleges that defendants made additional false and/or misleading statements throughout the Class Period concerning Bright Health's second quarter results, including in a press release and earnings call with investors and analysts on August 3, 2021, and in a Form 10-Q quarterly report filed with the SEC on August 11, 2021.  See id. ¶¶ 7, 49-55.

On November 11, 2021, defendants issued what is alleged to be the sole corrective disclosure in this case: a press release regarding Bright Health's 2021 third quarter results, which reported, among other things, earnings per share of -$0.48 and a "sharp rise" in its

---

2002).  Specifically, "the PSLRA amended the Securities Exchange Act of 1934 by adding § 21D, to be codified at 15 U.S.C. § 78u–4[,]" Lax v. First Merchs. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *2 (N.D. Ill. Aug. 11, 1997), as well as the Securities Act of 1933 by adding § 27, to be codified as 15 U.S.C. § 77z-1, see Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995); see also Huang v. Reyes, No. C 07-5950 CRB, 2008 WL 648519, at *2 (N.D. Cal. Mar. 6, 2008) ("Congress passed the Private Securities Reform Act in 1995 (codified as 15 U.S.C. § 77z-1)").

medical cost ratio—results that were a distinct departure from defendants' prior representations.  See id. ¶¶ 8, 56.  Following the corrective disclosure, "Bright Health's stock price fell $2.36 per share, or 32.33%, to close at $4.94 per share on November 11, 2021."  Id. ¶¶ 9, 57.  Bright Health's stock continues to trade below the $18.00 IPO share price.  See id. ¶¶ 10, 58.

On March 21, 2022, while the six motions for appointment as lead plaintiff and approval of lead counsel remained pending before this Court, movants Fornaci and Primerano/Ackerman filed notices of non-opposition to the other movants' pending motions, conceding that they do not possess the largest financial interest in this litigation, within the meaning of the PSLRA.  See Fornaci Notice of Non-Opposition (Mar. 21, 2022) at 1, DE #19; Primerano/Ackerman Notice of Non-Opposition (Mar. 21, 2022) at 2, DE #21.  On the same day, the City of Providence withdrew its motion for appointment as lead plaintiff.  See City of Providence Notice of Withdrawal of Motion (Mar. 21, 2022) at 1, DE #20.

Subsequently, on March 22, 2022, movant Van filed a memorandum in further support of his motion, asserting that he is the presumptively most adequate plaintiff because he suffered the greatest financial loss and also preliminarily satisfies the typicality and adequacy requirements.  See generally Van Memorandum in Further Support of Motion and in Opposition to Competing Motions (Mar. 22, 2022) ("Van Supp."), DE #22.  He further argues that this presumption cannot be and has not been rebutted by the remaining movants.  See id. In response, OPPRS filed an opposition to the competing motions, in which OPPRS concedes that it does not have the largest financial interest, but nevertheless requests that the Court appoint Van and OPPRS as co-lead plaintiffs, due to OPPRS' allegedly "preferred" status as

4

an institutional investor, as well as the fact that Van is a Hong Kong resident, which OPPRS asserts may cause logistical issues.  See OPPRS Memorandum of Law in Response to Competing Motions for Lead Plaintiff (Mar. 22, 2022) ("OPPRS Opp.") at 1-3, DE #23. OPPRS also urges the Court to deny Herrera's motion because of Herrera's prior plea of *nolo contendere* to charges of grand theft and Medicare fraud.  See id. at 3-5.  Herrera likewise opposes OPPRS' and Van's respective motions: he asserts that the Court should consider only "recoverable losses" under Section 11 of the Securities Act to calculate the largest financial interest here and that, applying his newly minted calculation method, Herrera is the most adequate lead plaintiff.  See Herrera Memorandum of Law in Opposition to Competing Motions (Mar. 22, 2022) ("Herrera Opp.") at 1-4, DE #24.  In the alternative, Herrera requests that the Court appoint him and Van as co-lead plaintiffs.  See id. at 3 n.2.

Thereafter, on March 24, 2022, Van sought leave of the Court to file a reply to OPPRS' and Herrera's oppositions to his appointment as the sole lead plaintiff, which the Court granted.  See Van Letter Motion for Leave to File Reply (Mar. 24, 2022), DE #25; Order (Mar. 24, 2022).  In his reply, Van argues that he remains the presumptively most adequate lead plaintiff, in part, because the loss calculation method that he applied (i.e., the "Last-In-First-Out" method or "LIFO" method) is the one preferred in this District and, by this measure, he has the greatest financial interest.  See Reply in Support [of] Motion to Appoint Counsel (Mar. 28, 2022) ("Van Reply") at 2-3, DE #26.  Van further argues that Herrera's loss calculation method should be rejected because it is contrary to existing law and would be detrimental to the proposed class; Van also asks that OPPRS' request for appointment as co-lead plaintiff be denied.  See id. at 5-9.

Finally, having secured leave of the Court, movant Herrera also filed a reply, see Herrera Letter Motion for Leave to File [Reply] (Mar. 28, 2022), DE #27; Order (Mar. 29, 2022), wherein he maintains that the proper measure of financial loss, in this case, is the loss sustained under Section 11 of the Securities Act (not under Section 10 of the Exchange Act) and that the presumption that Herrera is the most adequate lead plaintiff has not been rebutted by either of the other two remaining movants, see generally Herrera Reply in Support of Motion (Mar. 29, 2022) ("Herrera Reply"), DE #28.

## DISCUSSION

### I.    Appointment of Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in cases involving claims under the Exchange Act and/or Securities Act.[5]  The PSLRA's legislative history reveals that Congress enacted the law in response to class action abuses, as plaintiffs' lawyers would otherwise "race to the courthouse" to secure the lead plaintiff designation.  *In re* Olsten Corp. Sec. Litig., 3 F.Supp.2d 286, 294 (E.D.N.Y. 1998) (citation omitted), opinion adhered to on reconsideration sub nom. *In re* Olsten Corp., 181 F.R.D. 218 (E.D.N.Y. 1998). "By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" Id. (quoting H.R. Rep. No. 104-369 at 32 (1995)).

Procedurally, the law directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of

---

[5] Notably, "the lead-plaintiff provisions of the 1933 and 1934 acts are identical." Lax, 1997 WL 461036, at *2 n.2.

adequately representing the interests of class members" (generally known as the "most adequate plaintiff"). 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). "Courts follow a two-step process to determine the most adequate plaintiff." See generally Darish, 2021 WL 1026567, at *5 (citing *In re* Gentiva Sec. Litig., 281 F.R.D. 108, 111-12 (E.D.N.Y. 2012)). In the first stage of the inquiry, the PSLRA establishes a "presumption" that the most adequate plaintiff is the person or group of persons who or that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

Once the court determines that there exists a presumptively adequate lead plaintiff, it must move to the second stage of the inquiry: whether that presumption has been sufficiently rebutted by any member of the purported plaintiff class. See 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II). Specifically, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. §§ 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).

7

**A.      Timely Notification**

As an initial matter, the PSLRA requires that the plaintiff who files the first action publish notice to the class within 20 days of filing the action, in "a widely circulated national business-oriented publication or wire service," advising members:

> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and

> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §§ 77z-1(a)(3)(A)(i), 78u-4(a)(3)(A)(i).

On January 6, 2022—the same day the Complaint was filed—Pomerantz LLP, as counsel for plaintiff Marquez, published a notice in *PR Newswire* announcing that a securities class action had been filed against Bright Health and several individually named defendants. See PSLRA Early Notice dated January 6, 2022 (docketed on Mar. 7, 2022) at 2-5, DE #7-5. The published notice advised that those qualifying shareholders of Bright Health stock wishing to serve as lead plaintiff in the purported class action "have until March 7, 2022 to ask the Court to appoint [them] as Lead Plaintiff[.]" Id. at 3.  No moving party has challenged the adequacy of the January 6, 2022 notice, and the filing of a press release through *PR Newswire* is an appropriate means of satisfying the PSLRA's notice requirement, 15 U.S.C. §§ 77z-1(a)(3)(A)(i), 78u-4(a)(3)(A)(i).  See, e.g., City of Sunrise Firefighter's Pension Fund v. Citigroup Inc., 20-cv-9132 (AJN), 2021 WL 396343, at *2 (S.D.N.Y. Feb. 4, 2021) ("City of Sunrise") (finding PSLRA notice requirement satisfied where plaintiff's notice was timely filed in *PR Newswire*); Cushman v. Fortress Biotech, Inc., 20-CV-5767 (KAM), 2021 WL

7449182, at *2 (E.D.N.Y. Mar. 24, 2021) (same), aff'd 2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021).

Based on the January 6, 2022 publication date, the 60-day period in which members of the proposed class could move to serve as lead plaintiff of said class expired on March 7, 2022. The three remaining movants—Van, Herrera, and OPPRS—have timely moved for lead plaintiff status, as their respective motions were filed on March 7, 2022. See generally Van Motion, DE #7; Herrera Motion, DE #16; OPPRS Motion, DE #8. In the absence of any objection to the January 6, 2022 notice, and because Van, Herrera, and OPPRS have complied with the PSLRA's 60-day deadline to move to serve as lead plaintiff of the putative class, the Court must next consider which of these movants has the largest financial interest in the relief sought, see 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(I)(bb), and whether the movant with the largest financial interest also satisfies the requirements of Rule 23 of the FRCP, see 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(cc), 78u-4(a)(3)(B)(iii)(I)(cc).

### B.    Largest Financial Interest

The PSLRA requires courts to "adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class[,]" 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(I)(bb), but offers no statutory guidance for determining which plaintiff has the largest financial interest, see Darish, 2021 WL 1026567, at *5 (citation omitted); In re Gentiva, 281 F.R.D. at 112. Courts in the Second Circuit have adopted the four "Olsten factors" to determine which plaintiff has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class

9

period; and (4) the approximate losses suffered during the class period." *In re* Olsten Corp., 3 F.Supp.2d at 295 (citing Lax, 1997 WL 461036, at *5); accord Chitturi v. Kingold Jewelry, Inc., 20-CV-2886-LDH-SJB, 2020 WL 8225336, at *4 (E.D.N.Y. Dec. 22, 2020); *In re* Gentiva, 281 F.R.D. at 117.  Most crucial to the Court's determination is the fourth factor— the approximate financial loss suffered.  See Plymouth Cnty. Ret. Ass'n v. Innovative Tech., Inc., 21 Civ. 4390 (VM), 2021 WL 4298191, at *2 (S.D.N.Y. Sept. 21, 2021), adhered to on reconsideration sub nom. Plymouth Cnty. Ret. Ass'n v. Array Tech., Inc., 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021); Darish, 2021 WL 1026567, at *5; Baughman v. Pall Corp., 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

Only movants Van and Herrera still claim to possess the largest financial interest in this litigation.[6]  For the reasons set forth below, the Court concludes that Van has suffered the greatest loss and is therefore the movant with the largest financial interest.

### i.  Loss Calculation Methodology

As noted above, "[m]ost courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures."  Silverberg v. DryShips Inc., 17-CV-4547 (SJF)(ARL), 2018 WL 10669653, at *4 (E.D.N.Y. Aug. 21, 2018) (citations omitted) (alteration in original).  Two accounting methodologies are available to calculate the approximate losses sustained by a proposed lead plaintiff in a securities class action—First-In-First-Out ("FIFO") or Last-In-First-Out ("LIFO"): The "LIFO [method] calculates losses by assuming that the first stocks to be sold

---

[6] OPPRS concedes that Van, having suffered $2,902,098.36 in losses, has the largest financial interest at stake here.  See OPPRS Opp. at 1, DE #23.  Accordingly, in determining the presumptively most adequate lead plaintiff, the Court's financial loss assessment does not address OPPRS' loss.

10

are the stocks purchased most recently prior to that sale. The alternative, . . . [FIFO], assumes that the first stocks to be sold are the stocks that were acquired first." Foley v. Transocean Ltd., 272 F.R.D. 126, 129 (S.D.N.Y. 2011). "[T]he overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses." Bo Young Cha v. Kinross Gold Corp., No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (collecting cases); see Salim v. Mobile Telesys. PJSC, 19-CV-1589 (AMD)(RLM), 2019 WL 11095253, at *3 n.5 (E.D.N.Y. Sept. 11, 2019) ("Courts in both the Second Circuit and nationwide prefer to use a LIFO calculation when assessing losses, rather than a FIFO methodology." (citation omitted)); Atanasio v. Tenaris S.A., 331 F.R.D. 21, 27 n.5 (E.D.N.Y. 2019) (noting courts' preference for the LIFO method, because FIFO "may exaggerate losses" (citation omitted)); Foley, 272 F.R.D. at 129.

Here, both Van and Herrera claim to have the largest financial interest in the relief sought by the class. Van asserts that he has the largest financial interest because, applying the LIFO calculation method, he suffered $2,902,098.36 in losses under the Exchange Act (and $2,984,000 under the Securities Act), see Van Reply at 1-3, DE #26, whereas Herrera suffered only $2,320,824.79 in (Exchange Act) losses, see Van Supp. at 1, 3, DE #22; see also Van Memorandum in Support of Motion (Mar. 7, 2022) ("Van Mem.") at 2, 5, DE #7-1. Herrera does not challenge the accuracy of Van's LIFO calculations; instead, Herrera now argues that the Court should assess the comparative losses between the remaining movants by calculating each one's "recoverable losses" related to those claims brought under Section 11 of the Securities Act, as opposed to the Exchange Act. See Herrera Opp. at 2-4, DE #24; Herrera Reply at 1-3, DE #28. According to Herrera, the price decline in shares of Bright Health

11

securities prior to the corrective disclosure on November 11, 2021 should be excluded in calculating the movants' respective losses.  See Herrera Opp. at 3-4, DE #24; Herrera Reply at 2-3, DE #28.  Under Herrera's proposed "Section 11 Recoverable Loss" calculation method, Herrera now claims to have suffered $1,449,170.76 in losses, as compared with what he calculates as Van's $844,000.00 in losses, and that therefore Herrera is the presumptively most adequate lead plaintiff.  See Herrera Opp. at 4, DE #24.

As an initial matter, the Court notes that Herrera proposed his "Section 11 Recoverable Loss" method for the first time in his opposition papers.  In fact, his original financial analysis, submitted in support of his March 7, 2022 motion, calculates Herrera's losses as $2,320,824.79 under the Exchange Act and $2,459,829.72 under the Securities Act.  See [Herrera] Financial Interest Analysis (Mar. 7, 2022) ("Herrera Original Financial Analysis"), DE #18-3 at 2-3.  "[C]ourts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss."  City of Sunrise, 2021 WL 396343, at *4 (collecting cases). "Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs."  Id. (collecting cases). Indeed, this Court finds Herrera's argument to be opportunistic (and unpersuasive), given that he apparently initially used a loss calculation methodology similar to Van's, and only advanced the new calculation method, and his "Section 11 Recoverable Loss" theory, after the relevant deadline had passed, upon learning that Van had sustained the larger loss.  "This fact alone counsels in favor of adopting the LIFO methodology" advocated by Van.  Bodri v. GoPro,

12

Inc., Case Nos. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (citation omitted); accord City of Sunrise, 2021 WL 396343, at *4.

More importantly, Herrera's newly proposed calculation method also lacks legal support.  Loss causation is not an element of a claim under Section 11 of the Securities Act. See, e.g., Levine v. AtriCure, 508 F.Supp.2d 268, 277-78 (S.D.N.Y. 2007).  A plaintiff's recoverable damages under Section 11 are determined by calculating the difference between the purchase price and, depending on the circumstances of the case, either (1) the share price on the date suit was brought, or (2) the price at which the shares were sold prior to litigation, or (3) the price at which the shares were sold during litigation, see 15 U.S.C. § 77k(e)[7]; loss causation is an affirmative defense to be proven by defendants, not a prima facie element to be established by plaintiffs, see 15 U.S.C. § 77l(b); N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 120 (2d Cir. 2013) (holding that Securities Act plaintiffs need not allege loss causation); see also Fed. Housing Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc., 873 F.3d 85, 153 (2d Cir. 2017).

---

[7] Specifically, the "[m]easure of damages" prescribed in Section 11 defines recoverable damages as

> the difference between *the amount paid for the security* (not exceeding the price at which the security was offered to the public) and (1) *the value thereof as of the time such suit was brought*, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought: Provided, That if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.

15 U.S.C. § 77k(e) (emphasis added); see Herrera Original Financial Analysis, DE #18-3 at 3.

13

In this case, Van purchased 200,000 shares of Bright Health on June 24, 2021, the day the common stock began trading on the New York Stock Exchange, and paid the offering price of $18.00 per share, see Van Loss Analysis (Mar. 7, 2022) at 1, DE #7-4; Van Reply at 3, DE #26; see also Compl. ¶ 4; he held all those shares through the corrective disclosure and the commencement of this action on January 6, 2022, at which time their value had declined to $3.08 per share, see Van Reply at 3, DE #26.  Using the statutorily prescribed method of calculating damages set forth in Section 11, and the share value ($3.08) as of the date that this lawsuit commenced, Van's Securities Act losses total $2,984,000 (i.e., ($18.00 - $3.08) x 200,000) and thus exceed Herrera's losses.[8]  See Van Reply at 3 & n.2, DE #26.

Straining to avoid a second-place finish, Herrera argues that, rather than comparing the movants' respective purchase prices and the post-corrective-disclosure price, Section 11 losses should be determined by calculating the difference between the share price immediately preceding the November 11, 2021 corrective disclosure ($7.30 per share) and the post-corrective-disclosure share price ($4.94 per share), and then multiplying the differential by the number of shares purchased by each movant.[9]  See Herrera Opp. at 1-4, DE #24.  Ignoring the statutory language of 15 U.S.C. § 77k(e), Herrera contends that his method is superior because any decline in value between a movant's purchase price and the latest price predating the

---

[8] In their initial submissions to the Court, Herrera claimed to have suffered $2,459,829.72 in Securities Act losses, see Herrera Original Financial Analysis, DE #18-3 at 3, while Van, using the mean trading price from 11/11/21 to 2/8/22 (i.e., $3.4895), claimed to have suffered $2,902,098.36 in losses, see Van Loss Analysis at 1 & n.1, DE #7-4.  When faced with Van's loss of $2,902,098.36, Herrera devised his new method for calculating losses, yielding a $1,449,170.76 loss to Herrera, and a $844,000.00 loss to Van.  See Herrera Reply at 2, DE #28.

[9] As Van correctly observes, Herrera "used the $18.00 IPO price in connection with his initial loss figures."  Van Reply at 7 n.6, DE #26; see Herrera Original Financial Analysis, DE #18-3 at 2-3 (including those shares traceable to the June 24, 2021 IPO and utilizing those shares' initial purchase price to calculate Section 11 losses).

14

corrective disclosure is not "recoverable" under Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), and its progeny.[10] See Herrera Opp. at 2, 4, DE #24; Herrera Reply at 2-3, DE #28.

Herrera's reliance on this line of caselaw is misguided. Dura concerned loss causation in connection with claims under Section 10(b) of the Exchange Act, not Section 11 or any provision of the Securities Act. See Dura Pharms., 544 U.S. at 341-46. To be sure, consistent with Dura, courts within this Circuit have considered loss causation in selecting lead plaintiffs in Exchange Act cases, and have excluded from their loss calculations those losses that resulted from "in-and-out" transactions that occurred within the class period but that predated the revelation of the challenged misconduct. See, e.g., Khunt v. Alibaba Grp. Holding Ltd., 102 F.Supp.3d 523, 531 (S.D.N.Y. 2015); Sallustro v. Cannavest Corp., 93 F.Supp.3d 265, 273 (S.D.N.Y. 2015); *In re* Comverse Tech., Inc. Sec. Litig., No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *4-5 (E.D.N.Y. Mar. 2, 2007), adhered to on reconsideration 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008). None of the lead-plaintiff cases cited by Herrera applied that analysis to losses under Section 11. Moreover, assuming *arguendo* that, in the context of motions to appoint lead plaintiffs in cases asserting claims under Section 11, courts should exclude losses resulting from in-and-out trading that predated the corrective disclosures, here there are no such transactions or losses, inasmuch as Van held all 200,000 of his shares purchased at the IPO through the date of the commencement of this

---

[10] The Court finds it troubling that Herrera, while claiming that he would best represent the interests of the purported class members, sets forth in great detail why "defendants will be able to argue that these losses associated with price declines prior to the corrective disclosure (from $18.00 down to the $7.30 pre-disclosure price) are not related to the misleading statements and omissions in the registration statement." Herrera Opp. at 4, DE #24.

action. See Van Reply at 3, DE #26. The Court therefore credits Van's calculation of his losses under both Section 10(b) and Section 11, which exceed Herrera's losses.[11]

As a fallback position, Herrera asks that he and Van be appointed as co-lead plaintiffs in order to ensure that both the Section 10(b) claims under the Exchange Act and the Section 11 claims under the Securities Act are adequately represented, relying primarily on Wang v. Athira Pharma, Inc., C21-861 TSZ, 2021 WL 4726458 (W.D. Wash. Oct. 5, 2021), in support of his request, see Herrera Opp. at 3 n.2, DE #24. However, Wang—a non-binding, out-of-circuit decision—is distinguishable from the instant case. In Wang, the court appointed co-lead plaintiffs—"a lead plaintiff for the Exchange Act claims and a different lead plaintiff for the Securities Act claims"—because the movant with the indisputably greatest Section 10(b) losses faced a tangible risk of being unable to prove scienter as an element of his Exchange Act claims and had "*no* losses traceable to the IPO and Registration Statement" whatsoever.[12] Wang, 2021 WL 4726458, at *3-4 (emphasis added). The court in Wang reasoned that appointment of co-lead plaintiffs was therefore essential to avoid the need thereafter to replace a lead plaintiff, as well as the resultant delays in litigation. See id. In contrast, here, even by Herrera's calculations, Van sustained substantial losses under Section 11 of the Securities Act, and there is no reason to believe Van will be disadvantaged in proving scienter regarding the Exchange Act claims. See Van Reply at 3, DE #26 (representing that Van purchased 200,000

---

[11] Indeed, while crafting a novel methodology by which to leapfrog Van in terms of "Section 11 Recoverable Losses," Herrera is unable to devise a theory pursuant to which his Section 10(b) losses exceed those suffered by Van. See generally Herrera Opp., DE #24; Herrera Reply, DE #28. Instead, he suggests that the Court should appoint a lead plaintiff based solely on losses under the Securities Act, as "Section 11 claims are the primary claims in the action." Herrera Reply at 1-2, DE #28. Not surprisingly, Herrera cites no authority to support his argument.

[12] Notably, the court in Wang applied the LIFO method to calculate the movants' respective losses. See Wang, 2021 WL 4726458, at *2.

16

shares at the IPO for $18.00 per share, which he held through the filing of the Complaint, and that he suffered $2,984,000 in Section 11 losses); Herrera Opp. at 3-4, DE #24 (asserting that Van, having purchased 200,000 shares, suffered $844,000.00 in Section 11 losses).  As such, this Court is not presented with the same concerns as those in Wang, and thus finds no compelling reason to appoint co-lead plaintiffs in this securities class action.

### C.      Satisfaction of Rule 23

Having identified Van as the plaintiff with the greatest financial loss and thus the largest financial interest in the litigation, the Court must now "focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements [of the PSLRA]." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc., 229 F.R.D. 395, 411 (S.D.N.Y. 2004) (citation and quotations omitted); accord Khunt, 102 F.Supp.3d at 535; Darish, 2021 WL 1026567, at *6.  Under the PSLRA, in order to serve as lead plaintiff, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the FRCP.  See 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(cc), 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) specifies four requirements for certification of a class action: numerosity, commonality, typicality, and adequacy.  See Fed. R. Civ. P. 23(a).

In determining whether the presumptively most adequate plaintiff satisfies Rule 23 for the purposes of the PSLRA, a court need only consider whether that movant's claims are typical and adequate, and the presumptive lead plaintiff need only make a preliminary, prima facie showing as to the typicality and adequacy requirements.  See In re Olsten Corp., 3 F.Supp.2d at 296 ("[T]he party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule

17

23." (citations omitted)); accord *In re* Gentiva, 281 F.R.D. at 112 (citation omitted).  At this initial stage of the litigation, a "wide ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification." Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252-53 (S.D.N.Y. 2003) (citations and quotations omitted); accord Darish, 2021 WL 1026567, at *6.[13]

Van has made the requisite preliminary showing with respect to Rule 23(a)'s typicality requirement.  Cases in the Second Circuit have held that the typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Brady v. Top Ships Inc., 324 F.Supp.3d 335, 350 (E.D.N.Y. 2018) (quoting *In re* Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)).  Similar to potential class members, Van asserts that he "(1) purchased Bright Health common stock during the Class Period and/or pursuant or traceable to the IPO; (2) in reliance on Defendants' false and misleading statements; and (3) suffered harm when defendants' alleged misconduct was revealed." Van Mem. at 6, DE #7-1; see also Van Reply at 4, DE #26 ("Mr. Van purchased Bright Health shares during the Class Period, and held those shares over the November 11, 2021 corrective disclosure and through the commencement of the Action, suffering damages as a result therefrom. Thus, Mr. Van's claims rely on the same facts and legal theories as the proposed Class and [he] therefore satisfies the typicality requirement.").  Van, as the movant with the largest financial interest in this litigation, has therefore preliminarily demonstrated typicality under Rule 23(a).

---

[13] "[A]ny finding that Rule 23 requirements have been met at this stage do[es] not preclude a later challenge in the context of a Rule 23 class certification motion." Ford v. Voxx Int'l Corp., No. 14-CV-4183(JS)(AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (citations omitted).

Van has likewise preliminarily satisfied the adequacy requirement of Rule 23(a).  The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (citations omitted), on reconsideration in part sub nom. *In re IMAX Sec. Litig.*, 2009 WL 1905033 (S.D.N.Y. June 29, 2009); accord Plymouth Cnty. Ret., 2021 WL 4298191, at *2.  Based on Van's submissions, the Court is satisfied (as discussed *infra*) that Van's retained counsel, Labaton Sucharow, is experienced, competent, and well-qualified to conduct the class action securities litigation at hand.  Van maintains a sufficient financial interest in the outcome of the case with respect to all claims under the Exchange Act and the Securities Act to vigorously advocate on behalf of the class and, in his papers, he denies the existence of any conflicts of interest with absent class members.  See Van Mem. at 7, DE #7-1 ("Mr. Van is not aware that any conflict exists between his claims and those asserted on behalf of the Class."); see also Declaration of Winston Van (Mar. 7, 2022) ("Van Decl."), DE #7-6.

As set forth in greater detail below, despite Herrera and OPPRS' assertions to the contrary, the Court has no reason to believe that Van's interests are contrary or adverse to those of the class members.

### D.  Rebuttal Evidence

With respect to the second stage of the inquiry, only OPPRS challenges the adequacy of Van as the lead plaintiff.[14]  See generally OPPRS Opp., DE #23.  Specifically, OPPRS argues that Van is inadequate to serve as lead plaintiff because he has "no apparent experience with U.S. courts and discovery practices, and no experience serving in a representative capacity" and "is a resident of Hong Kong,[] which could create some logistical issues in participating in this litigation."  Id. at 1.  First, OPPRS fails to cite any caselaw to support its suggestion that prior litigation experience in U.S. courts is a prerequisite to a finding of adequacy of a proposed lead plaintiff.  As to Van's residency, as OPPRS concedes, a movant's "foreign residency is not disqualifying to serve as a lead plaintiff" in a securities class action, id. at 1 n.3, and "courts routinely appoint foreign investors as lead plaintiffs[,]" Sgalambo v. McKenzie, 268 F.R.D. 170, 176 (S.D.N.Y. 2010).[15]  Apart from speculation, OPPRS has put forth no evidence demonstrating that Van would face problems participating in this litigation as lead plaintiff due to his foreign residency.  OPPRS' arguments are also belied by the fact that in the same submission in which it argues that Van is inadequate to represent the class, OPPRS

---

[14] As the Court addressed *supra*, Herrera asserts that Van is not the most adequate lead plaintiff due to his allegedly smaller loss amount; however, Herrera does not challenge Van's adequacy on any other ground and, indeed, asks to be appointed co-lead plaintiff along with Van.

[15] OPPRS also relies on *In re* Baan Company Securities Litigation, 271 F.Supp.2d 3, 13 (D.D.C. 2002), for the proposition that courts are reluctant to appoint a foreign investor as the sole lead plaintiff in a securities litigation class action.  See OPPRS Opp. at 1 n.3, DE #23.  But the district court in *In re* Baan expressed reservations about appointing a foreign investor not only because he was living in Germany and required a translator, but also because he presented other issues, such as not having personally selected his own counsel and failing to show that he had "the ability or the incentive to control the litigation[.]"  271 F.Supp.2d at 13-14.  Here, Van has submitted a declaration in which he avers, among other things, that he has a Bachelor of Science degree from Northwestern University and an MBA from the University of Chicago; he has been investing for over 30 years; he has selected and retained Labaton Sucharow LLP; he understands his fiduciary obligation to the class and would monitor and oversee the law firm.  See Van Decl. ¶¶ 3-6.  Thus, this case presents none of the combined circumstances that led the court in *In re* Baan to conclude that the foreign investor would not adequately protect the interests of the class.  See 271 F.Supp.2d at 16.

asks that the Court appoint Van as co-lead plaintiff with OPPRS.  See OPPRS Opp. at 2-3, DE #23.[16]  Nor does OPPRS' "status as an institutional investor . . . overcome the presumption of adequacy accorded to [Van] as the plaintiff[] [with] the largest financial interest in this case." Francisco v. Abengoa, S.A., 15 Civ. 6279 (ER), 2016 WL 3004664, at *5 (S.D.N.Y. May 24, 2016).  In sum, OPPRS has not provided any *proof* that rebuts the presumption that Van would fairly and adequately protect the interests of the class, nor does the Court discern any basis for concluding that Van is subject to any unique defense that would otherwise render him incapable of adequately representing the class.  See 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(bb), 78u-4(a)(3)(B)(iii)(II)(bb); Foley, 272 F.R.D. at 131.  Accordingly, the PSLRA's statutory presumption has not been rebutted, and the Court finds Van to be the most adequate lead plaintiff.

## II.   Approval of Lead Counsel

The PSLRA also specifies the procedure to be followed for approving lead counsel in putative class actions brought pursuant to federal securities laws.  Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v).  As is evident from the statutory language, "the lead plaintiff's right to select and retain counsel is not absolute - the court retains the power and the duty to supervise counsel selection and counsel retention." City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc., CV 08-1418 (LDW) (ETB), 2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (quoting *In re* Luxottica Grp.,

---

[16] As Van correctly notes, see Van Reply at 9 n.9, DE #26, the cases cited by OPPRS in proposing it be appointed as co-lead plaintiff, see OPPRS Opp. at 2-3, DE #23, are inapposite, as most involved a joint request for appointment as co-lead plaintiffs.

S.p.A. Sec. Litig., No. 01–CV–3285, 2004 WL 2370650, at \*3 (E.D.N.Y. Oct. 22, 2004)). Nevertheless, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice … if necessary to protect the interests of the class." Rauch v. Vale S.A., 378 F.Supp.3d 198, 211 (E.D.N.Y. 2019) (alteration in original) (citations omitted); Brady, 324 F.Supp.3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (citation and internal quotations omitted)).  The PSLRA thus makes clear that courts should interfere with the lead plaintiff's selection and retention of counsel solely to "protect the interests of the class[.]"  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa); see Darish, 2021 WL 1026567, at \*8; Rauch, 378 F.Supp.3d at 211.

Here, Van has selected Labaton Sucharow as lead counsel and seeks this Court's approval of that selection.  In assessing a proposed lead plaintiff's selection and retention of counsel to represent a purported class, courts give significant weight to counsel's experience. See Rauch, 378 F.Supp.3d at 211.  Van has demonstrated that Labaton Sucharow has substantial experience litigating securities fraud class actions.  In support of his request to appoint Labaton Sucharow as lead counsel, Van has submitted Labaton Sucharow's 34-page resume, which provides a detailed description of the law firm's credentials and highlights its successful representation in numerous securities class actions across the country as well as in this Circuit.  See Labaton Sucharow Resume (Mar. 7, 2022) at 1-11, DE #7-7 (providing summaries of more than 20 prior securities class actions in which Labaton Sucharow served as lead or co-lead counsel and obtained favorable outcomes, as well as seven ongoing securities

22

class actions in which the firm is lead counsel).  Labaton Sucharow's resume also sets forth the educational background and qualifications of eight lawyers that are employed at the firm.  See id. at 19-32.  While Herrera and OPPRS oppose *Van's* adequacy to serve as *lead plaintiff*, no purported class member has offered any reason why Labaton Sucharow is unfit to serve as lead counsel in this case.  Moreover, other courts in this Circuit have appointed Labaton Sucharow as lead counsel in securities law class actions.  See, e.g., Okla. Firefighters Pension & Ret. Sys. v. Peabody Energy Corp., 20-cv-8024 (PKC), 2021 WL 100491, at *2 (S.D.N.Y. Jan. 12, 2021) ("Labaton Sucharow has extensive experience in litigating shareholder class actions and has been lead counsel in actions that have settled for hundreds of millions of dollars.");  City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc., 20-cv-2031 (JSR), 2020 WL 2614703, at *4 (S.D.N.Y. May 22, 2020) ("Labaton Sucharow's resume demonstrates that it possesses experience litigating securities class actions and has had success in these matters in the past.").  In short, as Van observes, Labaton Sucharow is "a nationally recognized securities class action firm" and "has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors."  Van Mem. at 2, 8, DE #7-1.  The Court therefore approves Van's selection of Labaton Sucharow to serve as lead counsel.

## CONCLUSION

For the foregoing reasons, this Court appoints Van as lead plaintiff and approves Labaton Sucharow as lead counsel, and denies Herrera's and OPPRS' motions.  The City of Providence's motion is terminated as moot, and Fornaci's and Primerano/Ackerman's motions are denied as moot.

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**April 26, 2022**

/s/ ***Roanne L. Mann***

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**